**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BRADLEY STUBBLEFIELD and
KRISTAN STUBBLEFIELD**                                               **PLAINTIFFS**

**vs.**                                        **CIVIL ACTION NO.: 3:15-CV-18-HTW-LRA**

**SUZUKI MOTOR CORP., and
SUZUKI MOTOR OF AMERICA, INC.**                                **DEFENDANTS**

## ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THIS COURT** is defendant Suzuki Motor Corp.'s Motion for Summary Judgment **[Docket no. 228]**. Suzuki Motor Corp. (hereinafter referred to as "SMC") filed its motion for summary judgment and its supporting memorandum brief on October 2, 2017. [Docket nos. 228, 229]. Plaintiffs filed their response in opposition (including their memorandum brief) on October 20, 2017. [Docket no. 276]. SMC filed its rebuttal on October 27, 2017. [Docket no. 295]. SMC's motion for summary judgment relies in part on various *Daubert* motions which this court has recently denied. [Docket no. 318]. After a careful review of the submissions of the parties, arguments of counsel, and the relevant jurisprudence, this court rules as follows:

**I.**      **JURISDICTION**

On January 9, 2015, Plaintiffs filed their lawsuit in this federal forum alleging causes of action for: strict liability under Miss. Code § 11-1-63; common law negligence; common law negligent failure to warn; common law breach of warranty; and punitive damages.

In their complaint, plaintiffs alleged that this court possess diversity of citizenship subject matter jurisdiction under United States Code Title 28, Section 1332[1].

---

[1] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
     (1) citizens of different States;

1

SMC has not challenged subject matter diversity jurisdiction; nevertheless, this court has an independent obligation to verify it possesses subject matter jurisdiction.[2]

Plaintiffs herein are Bradley Stubblefield (hereinafter referred to as "B. Stubblefield") and his wife, Kristan Stubblefield (hereinafter referred to as "K. Stubblefield"). The plaintiffs are both residents of the State of Mississippi.

Defendant Suzuki Motor Corporation (hereinafter referred to as "SMC") is a foreign corporation doing business in the State of Mississippi. SMC's principle place of business is 300 Takatsuka-cho, Minami-ku Hammamatsu-shi, SZK 432-8611 Japan.

Defendant Suzuki Motor of America Inc. (hereinafter referred to as "SMAI") is a California corporation doing business in the State of Mississippi.

Plaintiffs alleged that the amount in controversy, minus costs and interest, exceed $75,000, the statutory minimum in diversity of citizenship subject matter jurisdiction lawsuits.

Accordingly, this court finds that it possesses diversity of citizenship subject matter jurisdiction over this lawsuit.

---

(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C.A. § 1332 (West)

[2] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).
*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

## II. FACTUAL BASIS

### a. General Facts

B. Stubblefield, an experienced motorcycle rider with approximately twenty (20) years of experience, purchased a 2006 Suzuki GSX-R 1000 motorcycle (hereinafter referred to as "subject motorcycle") from a private seller in the State of Georgia in 2010. B. Stubblefield drove to Georgia to conduct the transaction and drove the motorcycle home. After he had purchased the subject motorcycle, B. Stubblefield drove to work on it from the time he purchased it until the date of his accident. B. Stubblefield would not drive the motorcycle only on days where the weather did not safely permit him to do so – for example when icy conditions dominated the roadway or when severe storms were passing through the region. According to B. Stubblefield, this meant he drove the motorcycle four (4) out of every five (5) work days on average. From the date of purchase to the date of the accident, B. Stubblefield accumulated approximately 16,000 miles on the subject motorcycle.

When he bought the subject motorcycle, the seller did not provide the user manual that came with it. B. Stubblefield downloaded the user manual from the internet and read it. B. Stubblefield performed all of his own maintenance with the exception of replacing the tires, for which he had taken the bike to a tire store. B. Stubblefield testified that he followed SMC's recommended maintenance schedule, including the changing of the brake fluid.

After he had purchased the subject motorcycle, B. Stubblefield purchased several aftermarket parts and replaced the stock parts on the subject motorcycle with these aftermarket parts. B. Stubblefield installed the aftermarket parts for cosmetic purposes. The aftermarket parts

that B. Stubblefield installed include: front brake pads; HID[3] headlight low beam; ECU flash[4]; front brake and clutch levers[5]; riser plates[6]; exhaust pipes[7]; a frame slider[8]; and handlebars[9].

In the morning of January 12, 2012, B. Stubblefield left his house located at 138 Prescott Ridge, Gluckstadt, Mississippi, to commute to work. B. Stubblefield was an architect who worked at JH&H Architects – who are currently located at 1047 N. Flowood Drive, Flowood, Mississippi. When he approached the onramp to Interstate 55 South at the Sowell Road interchange, B. Stubblefield attempted to enter the onramp. The parties agree that B. Stubblefield encountered gravel in the roadway before the concrete gore. After encountering the gravel, B. Stubblefield crossed the concrete gore, continued down an embankment, and his out-of-control vehicle ultimately came to an abrupt stop at the bottom of the ravine – some 13.6 feet below the roadway (a distance of approximately 127 feet). The subject motorcycle was laying on its left side pinning B. Stubblefield beneath it.

There are two (2) eyewitnesses to the accident: Karen Richmond (hereinafter referred to as "Richmond"); and Gregory "Trent" Gordy (hereinafter referred to as "Gordy").

Richmond testified that she was turning onto the onramp in front of B. Stubblefield and yielded to a driver who was coming from the opposite direction to enter the interstate – apparently Gordy's vehicle. "The next thing I know, there is a motorcycle right here on my right coming up

---

[3] "High Intensity Discharge" lights which make the motorcycle more visible to other drivers and allows for better night vision.
[4] "Engine Control Unit" – a timing retard eliminator modification that smoothed the throttle response because the stock ECU provided choppy throttle control at low speed.
[5] Modified to shorten the length of the control levers because the stock equipment extended past the hands and the extra length was unnecessary to the application of the braking system.
[6] Change the height of the foot pegs where the rider rests his or her feet during the operation of the motorcycle. B. Stubblefield lowered his for comfort.
[7] B. Stubblefield installed the aftermarket exhaust pipes for a different look and the sound that they produced.
[8] Frame Sliders allegedly protect the plastic parts on the motorcycle if the motorcycle were to fall over to the ground.
[9] B. Stubblefield installed HeliBar aftermarket handlebars which allowed for more user comfort – he didn't have to lean over as far because the HeliBar was taller and "a little bit farther back".

to my – driver's – on the left." According to Richmond, B. Stubblefield was close enough that she could almost reach out and touch him. Richmond never saw B. Stubblefield's brake light. B. Stubblefield then travelled over the cement gore and down into the ravine. Richmond stopped her vehicle and went down to help. When she got to the bottom, the subject motorcycle was laying over on top of B. Stubblefield's left leg. B. Stubblefield was unconscious when Richmond first arrived and then he woke up and tried to move. Richmond told him to lay still and told Gordy, who had now come down into the ravine, to call 911. Richmond stayed with B. Stubblefield until the ambulance arrived.

Gordy testified in his deposition that he never saw B. Stubblefield turn or wobble, that he continued straight over the concrete gore, went airborne, and down into the ravine.

B. Stubblefield has no memory of the date of the accident; instead, B. Stubblefield offers testimony of what he would "typically" do.

> Typically, when I'd come to that turn, that curve, I would have probably – I would have let off the gas for one, which would have slowed me down to an extent, and then I would have -- I would have used the brakes some before that curve, but I wouldn't have had to use them a lot because I was only going from -- you know, down maybe five, 10 miles an hour from the speed I was doing before the curve. But I would have braked beforehand and then leaned into the curve.

[Docket no. 228-1, P. 129, LL. 9-20].

Canton Police Department Officer Da'Varius Jackson (hereinafter referred to as "Officer Jackson") responded to the scene to conduct an investigation. According to Officer Jackson, the accident occurred around 7:40 a.m. and that the road was wet and the weather was cloudy. According to Officer Jackson, he was not sure what had caused B. Stubblefield to lose control of his vehicle; however, Richmond and Gordy both allegedly told Officer Jackson that they had observed B. Stubblefield lose control of his motorcycle in the gravel on the roadway.

5

B. Stubblefield's rate of speed is a contested point in this lawsuit: SMC says he was driving in excess of the speed limit; B. Stubblefield says that he was driving the speed limit. In either event, the speed limit is also a contested point between the parties.

B. Stubblefield's father, Dan Stubblefield (hereinafter referred to as "D. Stubblefield"), received a call at work telling him about B. Stubblefield's accident and he went to the emergency room. After he left the hospital, D. Stubblefield went to the scene of the accident to retrieve the motorcycle. D. Stubblefield first testified that he did not remember whether he had used the front brake on the day of the accident to maneuver the motorcycle onto his truck, but later qualified that answer to say that he thought the front brake was "mushy". When he had loaded the subject motorcycle onto his truck, D. Stubblefield took it to his home garage and stored it for B. Stubblefield.

He went again to the scene on January 18, 2012 to take pictures of the accident scene. While at the scene, D. Stubblefield did not see a tire skid in the roadway that led to the concrete gore.

Some months after the subject accident, D. Stubblefield rode the subject motorcycle around his neighborhood to test it so that B. Stubblefield could sell it. During that test ride, D. Stubblefield said the front brake stopped the subject motorcycle, but not as quickly as he would have liked.

On September 4, 2014, the parties conducted a mutual inspection of the subject motorcycle. During that inspection, the parties took measurements and pictures of the subject motorcycle. The parties also tested the front brake lever to determine how much pressure the parties needed to apply to engage the brakes.

Sometime after that testing, plaintiffs' attorney, Mike Malouf, Jr. (hereinafter referred to as "Attorney Malouf"), consulted with an expert motorcycle rider, Preston Lind (hereinafter

referred to as "P. Lind"), who rode the subject motorcycle. Attorney Malouf did not contact counsel for the defendants to inform them about the testing. Attorney Malouf and P. Lind were the only persons present during the secret testing. Afterwards, P. Lind allegedly told his mother, Jennifer Lind (hereinafter referred to as "J. Lind") that the subject motorcycle functioned as expected and that whoever wrecked the subject motorcycle did not know what he was doing. Later, in May, 2015, P. Lind died before the defendants became aware of the secret test ride.

The parties set August 5, 2016, as the date for a second round of joint testing on the subject motorcycle. After the parties had set the date, defendants learned about the secret test ride. After searching for P. Lind the parties found out that P. Lind was deceased. This court subsequently ordered the deposition of Attorney Malouf.

At the August 5, 2016 joint test, the parties inspected the subject motorcycle again and disassembled the FBMC from the subject motorcycle. After they had done so, the parties' expert witnesses noticed corrosion and a gel-like substance in the brake fluid. The parties agree that no one had changed the brake fluid since the date of the accident.

The parties disagree about what the testing showed.

    b. *Expert Witnesses*

        i. *Todd Hoover*

SMC designated Todd Hoover (hereinafter referred to as "Hoover") as an expert in accident reconstruction and rider interaction. The parties expect Hoover to testify that the following occurred:

1. B. Stubblefield was travelling approximately 48 to 55 mph when he approached the interstate on-ramp, and that speed was in excess of the speed limit of 30 mph.

2. B. Stubblefield braked and steered his vehicle inappropriately under the prevailing road conditions, and that B. Stubblefield could have stopped with only the rear brake had B. Stubblefield been travelling the speed limit.

3. B. Stubblefield's front brake was fully functional at the time of the crash.

4. B. Stubblefield's lack of attention to the road and due caution contributed to his accident.

5. B. Stubblefield could have slowed his vehicle and maneuvered into position behind Richmond's vehicle had he been driving safely.

6. Multiple decisions and driver error contributed to B. Stubblefield's accident: excessive speed; high risk behavior by attempting to pass Richmond on her driver's side; and inappropriate brake application.

7. Brake testing was conducted where plaintiffs' rider added a ½ block to the front brake lever. This procedure had no relevance and merely impeded the front brake lever travel distance.

8. Brake testing showed that both front and rear brakes were fully functional.

9. The residue found in the FBMC did not create erratic brake pressure.

See [Docket no. 213-4].

Plaintiffs have challenged all of Hoover's opinions by a motion to exclude, which this court already has denied. [Docket no. 318].

>   ii. *Kevin Breen*

Defendant Nissin Kogyo (whom this court already has dismissed, finding that the court did not possess personal jurisdiction over Nissin) designated Kevin Breen (hereinafter referred to as

"Breen") as an expert in mechanical engineering regarding the design of the FBMC. The parties expect Breen to testify to the following:

1. The FBMC, as designed and installed on the subject motorcycle, is an appropriate design as long as the end-user maintains the vehicle properly. The recall condition only arises when the end-user fails to follow SMC's recommended maintenance and service schedule.

2. The recall condition does not lead to catastrophic failure, but rather a "spongy" feeling in the brake lever due to the buildup of hydrogen gas. The application of the brake lever will restore brake function.

3. The corrosion by-products do not affect the seal of the FBMC and the subject motorcycle's brakes functioned fully despite the presence of the corrosion by-products.

4. The subject motorcycle was not experiencing the corrosion at the time of the accident as described by the recall notice.

5. The driver's own carelessness and the gravel in the roadway combined to cause B. Stubblefield's accident.

6. The design of the FBMC using a side return port and a zinc piston are consistent with industry practice.

Plaintiffs have challenged all of Breen's opinions by a motion to exclude, which this court already has denied. [Docket no. 318].

### iii. Mark Kittel

Plaintiffs designated Mark Kittel, P.E. (hereinafter referred to as "Kittel"), as an expert in accident reconstruction and brake systems design. The parties expect Kittel to testify to the following:

9

1. The braking capability of the subject motorcycle was significantly diminished by the presence of gas in the FBMC due to a design defect which allows for the buildup of gas in the system.
2. B. Stubblefield's accident likely occurred as a result of the buildup of gases in his braking system.
3. B. Stubblefield would have likely stopped before entering the ravine had his front brake been working.
4. B. Stubblefield was not speeding during the time leading up to the crash sequence.

SMC has challenged all of Kittel's opinions by a motion to exclude, which this court already has denied. [Docket no. 318].

### iv. Jason Walton

Plaintiffs designated Jason Walton (hereinafter referred to as "Walton"), as an expert in accident reconstruction. The parties expect Walton to testify to the following:

1. B. Stubblefield's accident was caused by a defective FBMC.
2. B. Stubblefield was not driving in a imprudent manner and was following the rules of the road, obeying the speed limit, and operating the subject motorcycle in a reasonable manner.

SMC has challenged all of Kittel's opinions by a motion to exclude, which this court already has denied. [Docket no. 318].

### v. Jeffery Hyatt

Plaintiffs designated Jeffery Hyatt (hereinafter referred to as "Hyatt"), as an expert in forensic engineering and design principles of the subject FBMC. The parties expect Hyatt to testify to the following:

1. B. Stubblefield's FBMC had corrosion by-products that disrupted the seal in the FBMC which allowed gas into the braking system. The corrosion also produced hydrogen gas which accumulated in the FBMC causing front brake failure. The front brake functioned poorly when it was first tested but its performance improved over time. The side return port did not allow sufficient purging of the gases in the FBMC.

2. The design of a zinc piston in contact with a steel spring caused the corrosion in the FBMC.

3. Top feed master cylinders are a alternative design that adequately purges gas from the brake system.

4. SMC knew about the defect as early as April 2013 (Hyatt's supplemental report indicates that SMC knew about the defect as early as 2009 and was investigating reports of FBMC failure as early as 2007).

5. The rear brake master cylinder is another feasible alternative design.

6. Solid particulate corrosion by-products prevent the braking system from self-bleeding.

SMC has challenged all of Hyatt's opinions by a motion to exclude, which this court already has denied. [Docket no. 318].

### III. DISCUSSION

#### a. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of identifying evidence showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether summary judgment is appropriate, this court must examine "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any," to determine if there are no genuine disputes as to any material facts and the moving party is entitled to a judgment as a matter of law. *McDonald v. Entergy Operations Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (*quoting* Fed. R. Civ. P. 56(c)).

The court must view the facts, evidence and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence . . . since it is the province of the jury to assess the probative value of the evidence.'" *McDonald*, 2005 WL 2474701, at *3 (*quoting Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

"A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial." *McDonald*, 2005 WL 2474701, at *3 (*citing National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962)). "[C]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial." Id. (*citing TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1997). "Where factual disputes exist [in a summary judgment determination] asserting qualified immunity, [the court] accept[s] the plaintiffs' version of the facts as true." *Hunt v. Tomplait*, 301 Fed.Appx. 355, 359 (5th Cir. 2008).

### b. Summary Judgment Based on *Daubert* Motions

SMC first argues that this court should dismiss all of plaintiffs' claims because plaintiffs cannot produce an expert witness who is competent to testify in this matter. SMC relied upon its expectation that this court would grant its Motions to Exclude plaintiffs' expert witnesses. *See* [Docket nos. 221, 223, and 225].

This court reviewed the submissions of the parties and did not agree with SMC that those motions were ripe for this court's consideration. [Docket no. 318]. This court denied all three (3) motions without prejudice, allowing SMC to re-urge their motions and address this court's stated concerns.

Accordingly, this court finds SMC's motion for summary judgment is without merit and denies it.

### c. Mississippi Products Liability Act Claims ("MPLA")

Plaintiffs have asserted three (3) claims for recovery under the MPLA: design defect; manufacturing defect; and failure to warn. As summarized above, the parties have retained expert witnesses who will testify in their favor. "This is a classic 'battle of the experts,' the winner of which must be decided by a jury." *Cox v. Provident Life & Accident Ins. Co.*, 878 F.3d 504, 507 (5th Cir. 2017) (Citing *Pittman v. Gilmore*, 556 F.2d 1259, 1261 (5th Cir. 1977) ("In the ultimate analysis, the trier of fact is the final arbiter as between experts whose opinion may differ as to precise causes.")).

The parties each have proffered expert witnesses whose testimony is, at this stage of the litigation, not due to be admitted. The parties still face the hurdle establishing the admissibility of the testimony of their expert witnesses, a conclusion that is not forgone. This court finds that this lawsuit *sub judice* potentially presents a classic "battle of the experts" and, based on the

submissions of the parties, the jury must ultimately decide, if such testimony is admitted, whether it believes plaintiffs' expert witnesses or SMC's. Accordingly, SMC's motion for summary judgment is denied.

Even if this court ultimately excludes the expert testimony of the parties' expert witnesses, this court would still find that this lawsuit presents too many substantial disputes of material fact to allow this court to grant summary judgment.

The thrust of plaintiffs' response in opposition contends that the fact and expert witnesses contest the following facts: whether B. Stubblefield would have used his front brake prior to his accident; whether B. Stubblefield would have used his front brake in a curve or on gravel; whether B. Stubblefield's front brake was functional at the time of the crash; whether B. Stubblefield's motorcycle had corrosion in the FBMC; whether B. Stubblefield's motorcycle had hydrogen gas trapped in the FBMC; whether the vertical return port is more efficient than the horizontal return port at purging gas; whether the corrosive nature of the FBMC caused B. Stubblefield's crash; and whether SMC or SMAI knew or should have known about the recall condition before B. Stubblefield's accident, are all contested facts precluding summary judgment.

Plaintiffs argue that even more questions of fact adorn this lawsuit: whether B. Stubblefield attempted to apply his front brake; whether the front brake failed if he had done so; whether B. Stubblefield was riding his motorcycle in an improvident manner; and whether corrosion began in B. Stubblefield's FBMC before or after his accident.

Plaintiffs add that D. Stubblefield will testify that when he loaded the accident motorcycle onto his truck immediately after the accident, he noticed that when he engaged the front brake lever, he felt that it was "mushy". The, the following observations contest defendants' motion for summary judgment.

B. Stubblefield was an experienced rider who knew how to maneuver on gravel.

He was also quite familiar with the route he was travelling.

After the accident, the parties agree that corrosion was found in the FBMC on August 5, 2016. Plaintiffs' expert opines that this corrosion could have affected the braking capacity of the bike.

Plaintiffs also point to hydrogen gas in the FBMC. Similarly, plaintiffs' experts contend that this factor could have affected the subject bike's braking power.

Although B. Stubblefield has no present recollection of the accident, he intends to testify about his "typical" safe-driving journey to work.

Although Richmond says she did not observe B. Stubblefield use his brakes, or that she saw brake lights, she admits that she was not paying close attention.

Although defendant wishes to describe B. Stubblefield as a reckless driver that accident day, neither of the two individual on the scene described him as such.

The speed limit of the area is in dispute.

D. Stubblefield examined the accident area and did not observe any skid marks – an inference that B. Stubblefield was unable to engage his brakes.

D. Stubblefield, when he rode the bike several months after the accident (he was preparing to sell the bike) noticed the brakes were a little "spongy" but they stopped the bike.

This court agrees with plaintiffs that this case presents too many material questions of disputed fact precluding a grant of summary judgment. Accordingly, this court will deny SMC's motion for summary judgment.

### d. Breach of Warranty Claim

SMC next argues that plaintiffs' breach of warranty claims are barred by the statute of limitations as found in MISS. CODE § 75-2-725.[10] According to SMC, the subject motorcycle was manufactured on August 25, 2005, and sold to its first owner on December 6, 2005. Plaintiffs did not file the instant lawsuit until January 9, 2015. Therefore, says SMC, the statute of limitations ran on December 6, 2011, almost four (4) years before plaintiffs filed their lawsuit.

Plaintiffs conceded their breach of warranty claim saying: "Plaintiffs' concede that their Breach of Warranty claim is time-barred." [Docket no. 276, P. 19].

Accordingly, this court grants SMC's motion for summary judgment on plaintiffs' breach of warranty claim.

### e. Remaining Claims Subsumed by MPLA

SMC next contends that all of plaintiffs' remaining claims are subsumed by the MPLA and must be dismissed. SMC cites Mississippi Supreme Court precedent which says:

> In interpreting and applying the MPLA, we have explained that "the MPLA provides the exclusive remedy" for products-liability claims, and "since [the enactment of the MPLA], products-liability claims have been specifically governed by statute, and a claimant, in presenting his case, must pay close attention to the elements of the cause of action and the liability limitations enumerated in the statute." In other words, the MPLA has abrogated products-liability claims based on strict-liability or negligence theories, and the MPLA now provides the roadmap for such claims.

---

[10] (1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

MISS. CODE. ANN. § 75-2-725 (West)

*Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015) (Quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So.3d 1024, 1027 (Miss. 2011) and *Williams v. Bennett*, 921 So.2d 1269, 1273 (Miss. 2006)).

Plaintiffs cite *Elliot* also arguing that the Mississippi Supreme Court held that "no statutory requirement [] makes the MPLA the exclusive remedy for claims of malfunctioning automobiles." *Id.* at 269. Plaintiffs fail to read that sentence in context. The Mississippi Supreme Court qualified the quoted statement saying that because the *Elliot* plaintiffs' claims were based on the failure to warn, train, educate, or draft a warning plan about the product defect at issue in that case, they are derivative of the *Elliot* plaintiffs' products liability claims and must be analyzed under the MPLA. *Id*.

Accordingly, this court grants SMC's motion for summary judgment on plaintiffs' common law claims related to their products liability claims.

### f. Punitive Damages Claim

Finally, SMC argues that "if the Court grants SMC's motion for summary judgment, then Plaintiffs' punitive damages claim fails." [Docket no. 229]. *See* MISS. CODE § 11-1-65(c)[11].

Plaintiffs respond that SMC's motion for summary judgment on their punitive damages claim is not yet ripe.

This court agrees with plaintiffs. SMC's motion is predicated upon this court granting it summary judgment on all of its claims. As the court has ruled above, plaintiffs' MPLA claims still stand and must be decided by a trier of fact. Only after the jury decides whether SMC is liable to plaintiffs for compensatory damages is plaintiffs' claim for punitive damages ripe. Accordingly,

---

[11] (c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact. MISS. CODE. ANN. § 11-1-65 (West)

17

this court hereby denies SMC's motion for summary judgment on plaintiffs' punitive damages claim.

### g. *Plaintiffs' Contention that Motion for Summary Judgment is Untimely*

Plaintiffs contend that SMC's Motion for Summary Judgment is untimely and that they already had asked this court to deny SMC's Motion for Extension of Time to File Dispositive and *Daubert*-Type Motions. *See* [Docket nos. 215, 238]. This court earlier ruled on SMC's Motion for Extension of Time to File its Motion for Summary Judgment and granted it. *See* [TEXT ONLY ORDER 6/21/2018][12]. Accordingly, this court finds plaintiffs' argument without merit.

## IV. SEAL DOCUMENT

This court, in reviewing all the submissions of the parties, observed that plaintiffs had filed the deposition of B. Stubblefield without redaction. [Docket no. 276-2]. While reading the deposition, this court found personal identifiers[13] that should have been filed under seal or redacted. *See Equal Employment Opportunity Cmsn. V. Faurecia Automotive Seating, LLC*, 2017 WL 564051 (N.D. Miss. Feb 10, 2017).

This court finds that the private information of B. Stubblefield outweighs any possible public interest in the document. Accordingly, this court will *sua sponte*[14] seal that exhibit.

---

[12] TEXT ONLY ORDER granting 215 Motion for Extension of Time to File. The defendant, Suzuki Motor Corporation, has asked this court to approve a two (2) day extension of the scheduling order for the filing of Daubert and dispositive motions because the date currently set, September 30, 2017, fell on a Saturday. This court finds the motion well-taken and hereby GRANTS the defendants Motion for Extension of Time to File Dispositive and Daubert Motions [Docket no. 215]. NO FURTHER WRITTEN ORDER SHALL FOLLOW. Signed by District Judge Henry T. Wingate on 6/21/2018 (ab) (Entered: 06/21/2018)

[13] Home address, birthdate, and social security number.

[14] sua sponte (s[y]oo-ə spon-tee) [Latin "of one's own accord; voluntarily"] Without prompting or suggestion; on its own motion <the court took notice sua sponte that it lacked jurisdiction over the case>. • A multimember court may use the form nostra sponte [Latin "of our own accord"] to distinguish its collective action from that of a single judge. — Also termed sponte sua.
SUA SPONTE, Black's Law Dictionary (10th ed. 2014)

## V. CONCLUSION

IT IS, THEREFORE, ORDERED that SMC's Motion for Summary Judgment [Docket no. 228] is hereby GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the United States District Court Clerk's Office for the Southern District of Mississippi is hereby ordered to SEAL Exhibit B to Plaintiffs' Response in Opposition to SMC's Motion for Summary Judgment. [Docket no. 276-2].

IT IS FINALLY ORDERED that this matter is hereby set for a jury trial on all outstanding claims on Monday, November 5, 2018, at 9:30 a.m. and for a pretrial conference on Tuesday, October 23, 2018 at 9:00 a.m. in Courtroom 6A of the Thad Cochran Federal Courthouse in Jackson, Mississippi.

SO ORDERED this the 30th day of September, 2018.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT COURT JUDGE