IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BRADLEY STUBBLEFIELD and
KRISTAN STUBBLEFIELD                                                    PLAINTIFFS

vs.                                        CIVIL ACTION NO.: 3:15-CV-18-HTW-LRA

SUZUKI MOTOR CORP., and
SUZUKI MOTOR OF AMERICA, INC.                                          DEFENDANTS

**ORDER REGARDING DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF OTHER ACCIDENTS, LAWSUITS,
AND CLAIMS OF FRONT BRAKE ISSUES ON GSX-R MOTORCYCLES**

**BEFORE THIS COURT** is the defendants' Motion in Limine to Exclude Evidence of Other Accidents, Lawsuits, and Claims of Front Brake Issues on GSX-R Motorcycles **[Docket no. 270]**. By its motion Suzuki Motor Corp. (hereinafter referred to as "SMC") asks this court to exclude all evidence of specific other incidents involving GSX-R motorcycles and the related front brake master cylinder (hereinafter referred to as "FBMC") at issue here. According to SMC, those other incidents – some of which resulted in lawsuits filed against SMC – are irrelevant and must be excluded because they are not "substantially similar" to the facts of the lawsuit *sub judice*. Further, says SMC, the introduction of the pleadings of the other lawsuits are hearsay. Finally, SMC says that the introduction of such other incidents would be unfairly prejudicial to it.

Plaintiffs oppose SMC's motion in limine saying that the other incidents are relevant and that, while such are prejudicial, the introduction of such would not be unfairly prejudicial.

I.      FACTUAL BASIS

SMC's motion in limine is necessarily fact driven and, thus, this court will recite a brief synopsis of the facts as this court appreciates them based upon the submissions of the parties. "It is well settled that, before evidence of other crashes can be admitted into evidence, a plaintiff must

1

present a factual foundation for the court to determine that the other crashes were 'substantially similar' to the crash at issue." *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09CV169KS-MTP, 2012 WL 32960, at *2 (S.D. Miss. Jan. 6, 2012) (Citing *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cir.1989); *McGonigal v. Gearhart Industries, Inc.*, 851 F.2d 774, 778 (5th Cir.1986); *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082–83 (5th Cir.1986)).

    a. *Stubblefield Facts*

Plaintiff Brad Stubblefield (hereinafter referred to as "Stubblefield") purchased a used Suzuki GSX-R 1000 in 2010 from a private seller in the State of Georgia. After he purchased the motorcycle, Stubblefield rode the motorcycle most days to work – excepting when the weather did not allow, for example when the roads were icy or the weather called for severe storms. Stubblefield personally maintained his motorcycle, following SMC's recommended maintenance schedule.

On January 12, 2012, Stubblefield was riding the subject motorcycle to work and was attempting to utilize the on-ramp for Interstate 55 South near Madison, Mississippi. Acccording to eyewitnesses, they did not observe Stubblefield attempt to apply his brakes, front or rear. Stubblefield, for some reason(s) that the parties vigorously contest[1], did not turn onto the on-ramp; instead, he traveled across the cement gore and into a ravine. When he reached the bottom of the ravine, Stubblefield crashed and the motorcycle came to a rest laying atop of him. Stubblefield allegedly became a paraplegic as a result of the accident. Stubblefield has no recollection of the date of his accident.

---

[1] Plaintiffs contend that the FBMC was defective and failed so that Stubblefield could not stop his motorcycle in time to avoid the accident.
Defendants argue that Stubblefield was driving his motorcycle in a reckless fashion, lost control of his motorcycle, and that the FBMC worked fine.

2

Stubblefield and his family thought that the reason for the accident was that Stubblefield had lost control of the subject motorcycle while transiting the gravel in the roadway immediately before the concrete gore. The Stubblefields persisted in this notion until SMC issued a product recall on October 18, 2013, at which point they changed their opinion about what had caused the subject accident.

      *b. Augustine Facts*

Somige Augustine (hereinafter referred to as "Augustine"), a resident of New Orleans, Louisiana, purchased a used 2009 GSX-R 1000 in a used condition from a private seller in July 2015, without any knowledge of the prior maintenance or accident history of his motorcycle. Augustine rode his motorcycle for recreational purposes only – putting 1,900 miles on the motorcycle since he had purchased the vehicle ten (10) months before. Augustine performed no maintenance on his motorcycle.

At some date unknown to this court, Augustine rode his motorcycle for approximately nine (9) miles and stopped fourteen (14) times. After his initial ride, Augustine parked his motorcycle for a few hours and then rode it again later that same day. During his subsequent ride, Augustine allegedly experienced a loss of his front brake pressure when he first applied his front brake requiring him to "bail-off" of his motorcycle. As a result of his "bailing off" Augustine suffered scrapes and sore muscles. After his accident, SMC says that an inspection of Augustine's motorcycle revealed a leaking brake line. Allegedly, the recall work had never been performed after Augustine's accident, but his friends performed repairs, after which Augustine said his motorcycle performed as expected.

### c. Knepper Facts

Josh Knepper (hereinafter referred to as "Knepper") purchased a 2008 GSX-R 600 motorcycle in a used condition from a private seller in 2011. Knepper experienced two (2) accidents on his motorcycle. On September 28, 2012, Knepper rode his motorcycle approximately 30-40 miles to another town and experienced no issues. When he was returning from that other town, a pickup truck in front of Knepper vigorously applied its brakes causing Knepper to do the same. Knepper was unable to stop his motorcycle completely. He struck the rear of the pick up and went over the handlebars. Knepper ultimately landed in the pickup truck's bed with no major injuries. Knepper parked his motorcycle for several month before repairing and riding it again.

On June 5, 2013, Knepper rode his motorcycle to a location near his home and applied his front brake 15-20 times before arriving at his destination. When he was returning home, a pickup truck made an abrupt left turn in front of Knepper, again forcing Knepper to rapidly apply his brakes. Knepper was travelling 50-55 miles per hour and could not stop – he hit the left rear wheel of the pickup truck. Knepper required no medical attention and he rode his motorcycle home after the accident. From the pleadings, this court is unable to discern if the parties allege that Knepper lost front brake pressure during either accident.

### d. Nichols Facts

Sergio Nichols (hereinafter referred to as "Nichols") purchased a GSX-R 600 in a used condition from a private seller in 2010 or 2011. Nichols experienced front brake issues for weeks before his accident – he would lose front brake pressure while riding, but restore it by pumping the front brake lever several times while riding. On the date of his accident, Nichols had ridden his motorcycle all day without incident. During the late evening hours, while riding, Nichols allegedly lost front brake pressure while in a curve and lost control of his motorcycle. Nichols ran into a

ditch and his motorcycle eventually came to a rest in the road where it was struck by another vehicle. This court cannot determine whether Nichols sustained any injury.

### e. Trujillo Facts

Kristen Trujillo (hereinafter referred to as "Trujillo") purchased a new GSX-R 600 from a dealership. Trujillo left her motorcycle parked for a period of two (2) months without riding it. On the date of her accident, she tested her front brake before operating the motorcycle and it functioned as expected. Trujillo then took her motorcycle for a ride and within minutes both her front and rear brakes stopped working.

### f. Girard Facts

Derek Girard (hereinafter referred to as "Girard") bought a 2007 GSX-R 600 in a new condition in April 2007. Girard operated his motorcycle for six (6) years, storing it for approximately half of the year (from late fall through the spring). Girard never had issues with his brakes. On the date of his accident, Girard allegedly was involved in a single vehicle accident. There were no eyewitness, no police reports, and no injuries. Girard kept his motorcycle, repaired it, and at least as late as August 26, 2017, still rode it without issue.

### g. Winkler Facts

Scott Winkler (hereinafter referred to as "Winkler") brought a lawsuit in the Circuit Court of the Fourth Judicial Circuit of Duval County, Florida. (*Winkler v. Suzuki Motor Corp. et al*, No. 16-2014-CA-004130; Division CV-G). Winkler substantially modified his motorcycle, so much so that it was no longer considered street legal.[2] Winkler had raced his motorcycle earlier in the day at Roeblin Track in southern Georgia. Winkler had replaced the brake fluid two (2) days earlier. While driving at night, Winkler struck another vehicle that had turned in front of him.

---

[2] Winkler added racing tires, an exhaust silencer, modified handlebars, no tail light or headlight.

According to SMC, within minutes of his accident, Winkler tested his front brake and found that it performed as expected.

### h. Soulliere Facts

Thomas Soulliere (hereinafter referred to as *"Soulliere"*) filed a lawsuit in the Superior Court of California, Orange County (No. 30-2015-00790644) after having an accident where another vehicle abruptly pulled out in front of Soulliere. In Soulliere's case, he is no longer in possession of the motorcycle, therefore, the FBMC cannot be compared to that of Stubblefield's.

### i. Johns Facts

Adrian Johns (hereinafter referred to as "*Johns*") filed his lawsuit in the State Court of Douglass County, State of Georgia (No. 14-SV00043). In the Johns accident, Johns claims that his motorcycle sped up after he applied his front brake.

### j. Schall Facts

Derek Schall (hereinafter referred to as "Schall") filed his lawsuit in the United States District Court of Kentucky, Western District, Owensboro Division. (No. 4:14-CV-74-JHM). Schall was driving down an unfamiliar country road after dark when he had an accident on a curve. SMC alleges that Schall could have negotiated the curve without the application of his brakes and that Schall told first responders that he did not see the curve and failed to make the turn.

## II. DISCUSSION

United States District Court Judge Debra M. Brown stated succinctly the standard for a motion in limine.

> "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Wechsler v. Hunt Health Sys., Ltd*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (citing *Luce v. U.S*., 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)) (emphasis omitted). "Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Fair v. Allen*, No. 09-2018, 2011 U.S. Dist.

LEXIS 27390, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011); *see also Hull v. Ford*, No. C-05-43, 2008 U.S. Dist. LEXIS 3686, 2008 WL 178890, at *1 (S.D. Tex. Jan. 17, 2008).

*Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-CV-00129-DMB-SAA, 2015 U.S. Dist. LEXIS 17926, at *1-2 (N.D. Miss. Feb. 13, 2015).

  *a. Relevancy*

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence is not relevant, it is not admissible. See Fed. R. Evid. 402. As stated above, for motorcycle accidents that are not the subject of the instant litigation to be relevant, the proffering party must show that those other accidents were "substantially similar" to the lawsuit *sub judice*. *See Graves*. at *2. That proof is necessarily a factually driven one. *Id.*

Plaintiffs say that "the degree of similarity is a question that goes to the weight of the evidence (for the jury), not to admissibility." [Docket no. 289, P. 4] (Quoting *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 426 (5th Cir. 2006). Plaintiffs omitted the beginning of the quoted sentence which properly reads:

> Although Ionics urges that the district court properly excluded evidence of other fires because the circumstances of the BRA fires were unique, the law in this circuit with respect to cases, such as this case or *Davidson*, *that are not product liability cases*, is that the degree of similarity is a question that goes to the weight of the evidence (for the jury), not to admissibility. As long as there are similarities (as there are here), the differences are for the jury to decide.

*Id*. Emphasis added.

This court finds *Brazos'* next language to be the controlling authority in this lawsuit:

> "Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar products may be probative ... [of any number of factors]." *Jackson v. Firestone Tire & Rubber Co*., 788 F.2d 1070, 1082 (5th Cir.1986). The question of admissibility of substantially similar accidents is necessarily determined on a case-by-case basis, with consideration to be given to

7

any number of factors, including the product or component part in question, the plaintiff's theory of recovery, the defenses raised by the defendant, and the degree of similarity of the products and of the other accidents[.]

*Id.*

This court finds that the other Suzuki GSX-R accidents and lawsuits are not admissible in this lawsuit. The factual differences are too great to the accident at issue here. This court finds the following factors decisive in its determination: Stubblefield conducted his own maintenance; Stubblefield rode his motorcycle as a regular conveyance; and Stubblefield has no independent memory of the date of his accident and, therefore, cannot say whether he attempted to utilize his front brake.

The plaintiffs' theory of the case is that the FBMC failed under the exact conditions as described by SMC's voluntary product recall. SMC's defense theory is that the brakes functioned as expected and/or that Stubblefield was driving his motorcycle in a reckless manner and, as a result lost control of his motorcycle. Plaintiffs' theory of the case calls into question whether Stubblefield actually could have experienced a FBMC failure where the recall describes the failure as a result of the end user to properly maintain his motorcycle, including changing the brake fluid at regular intervals. Stubblefield conducted his own maintenance and testified that he changed the brake fluid himself.

None of the other accidents or lawsuits presents Stubblefield's factual scenario. with the exceptions of Winkler and Nichols. Winckler changed his brake fluid recently but his accident involved a highly modified motorcycle. Stubblefield modified his motorcycle also, but Stubblefield's modifications were for cosmetic purposes only. Nichols is distinguishable because he experienced front brake issues for weeks before his accident; Stubblefield did not. The other accidents are all similarly distinguishable: Augustine apparently had a leaking brake line; Knepper

apparently, or the parties failed to apprise the court, did not lose brake pressure; Trujillo lost pressure in her front and rear brakes; Girard had no issues with his front brakes until he was allegedly involved in a unwitnessed, single-vehicle accident; Soulliere sold his bike already so it could not be tested; Johns' complained that his bike sped up before his accident; and Schall failed to make a curve down an unfamiliar, dark, country road.

Accordingly, this court grants SMC's motion in limine.

### b. *Pleadings in Other Lawsuits as Hearsay*

SMC next contends that it expects that plaintiffs will attempt to introduce the documents, specifically the pleadings, from four (4) other lawsuits[3] against SMC, in this matter. Such documents would be hearsay according to SMC.

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). As a general rule, hearsay evidence is not admissible "unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.

Summaries of other cases gleaned from the pleadings are no more than hearsay with no probative value. *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993).

Plaintiffs failed to respond to this argument by SMC, thus, this court finds that plaintiffs have conceded this argument.

Accordingly, this court grants SMC's motion in limine.

---

[3] As discussed above, the other lawsuits are: *Scott Winckler v. Suzuki Motor Corp., et al.* – In the Circuit Court Fourth Judicial Circuit, In and for Duval County, Florida – No. 16-2014-CA-004130 – Division CV-G; *Thomas Joseph Soulliere v. Suzuki Motor of Am., Inc., et al.* – In the Superior Court of California, Orange County – No. 30-2015-00790644; *Adrian Johns, et al. v. Suzuki Motor Corp., et al.* – In the State Court of Douglas County, State of Georgia – No. 14-SV-00043; and Derek Schall v. Suzuki Motor of Am., Inc. – In the United States District Court for the Western District of Kentucky, Owensboro Division – No. 4:14cv74-JHM.

### c. More Prejudicial Than Probative

SMC also says that the introduction of other accidents or lawsuits would be more prejudicial than probative. *See* Fed. E. Evid. 403.[4]

> "Unfair prejudice" as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be "unfair." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977).

*Brazos* at 427.

SMC says that *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988) provides it support.

> As the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases. At the same time, the danger that the evidence will be unfairly prejudicial remains. The jury might infer from evidence of the prior accident alone that ultra-hazardous conditions existed . . . and were the cause of the later accident without those issues ever having been proved.

*Id*.

SMC argues that the introduction of such would result in a series of mini-trials on all of the various litigation and accidents that are not before this court. Plaintiffs respond that the introduction of such would not result in the mini-trials as foretold by SMC.

This court is persuaded that to allow the introduction of other accidents and lawsuits would be more prejudicial than probative. The danger of overwhelming the jury with the facts in each of the various accidents would be substantial. Moreover, forcing SMC to defend itself against nine (9) additional accidents would be prejudicial in the extreme, especially considering the proportionately miniscule probative value of those other accidents and lawsuits. Even were this court to find that the

---

[4] The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
Fed. R. Evid. 403

other accidents and lawsuits were substantially similar, this court would make the same ruling. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (Finding that "even when a substantial similarity of circumstances is established, the district court has broad discretion to exclude such evidence under Rule 403 of the Federal Rules of Evidence.").

This court cannot, after viewing the arguments and submissions of the parties, find that the introduction of the other accidents and lawsuits would not run afoul of Rule 403 of the Federal Rules of Evidence. Accordingly, this court grants SMC's motion in limine.

### d. *Subsequent Remedial Measures*

Plaintiffs further say that the other accidents and lawsuits are admissible because they do not fall within the definition of a subsequent remedial measures, apparently misunderstanding SMC's argument. Plaintiffs say that SMC had raised the issue of subsequent remedial measures[5] in the instant motion in limine, which it has not. This court has not found that the other accidents or lawsuits constitute subsequent remedial measures and, therefore, plaintiffs' finds that plaintiffs' argument has no merit.

### e. *Impeachment*

Plaintiffs next argue that these other accidents and lawsuits are admissible to impeach SMC's expert witnesses who have allegedly provided opinions that are contrary to the description of the defect of the product recall. Plaintiffs cite *Jones v. H.W.C. Ltd*. 2003 WL 42146 (E.D. La. Jan. 3, 2003) for support. In *Jones*, United States District Court Judge Sarah Vance found that

---

[5] When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.
Fed. R. Evid. 407

11

where a defendant had replaced non-skid tape on a ladder after a seaman had fallen off the ladder could be used to impeach one of the defendant's witnesses who claimed that the non-skid tape at the time of the accident was in a safe condition at the time of the accident. Plaintiffs also cite *Wood v. Morbark Industries, Inc.*, 70 F.3d 1201 (11th Cir. 1995) (finding that where the court had excluded evidence of a subsequent remedial measure pretrial and counsel for the defendant argued during open and closing statements that nothing was wrong with the equipment, the subsequent remedial measures should have been allowed to be introduced).

Defendants did not respond to plaintiffs' argument in this motion, however, they respond to plaintiffs' same argument in its motion in limine [Docket nos. 248, 287, and 305]. SMC argued in rebuttal that *Jones* and *Wood* are distinguishable because no witness has testified that the subject motorcycle did not contain the condition the recall warned customers about.

This court does not currently possess enough information to make a ruling on this matter because no witness has testified which might possibly allow impeachment with evidence of these other accidents and lawsuits. This court has already found that the other accidents and lawsuits are not "substantially similar" and cannot see, in a vacuum, how plaintiffs contend that the other accidents and lawsuits could be used for impeachment. This court, however, will reserve its judgment at this stage of the instant litigation and address plaintiffs' contention about impeachment during the jury trial of this matter.

  *f. Notice*

Plaintiffs finally argue that the other incidents are admissible to show that SMC possessed notice of the defect before Stubblefield's accident. According to plaintiffs, United States District Court Judge W. Allen Pepper's opinion lends their position support:

> With regard to the admissibility of other incidents in a products liability action, "the 'substantial similarity' requirement for admissibility is relaxed when evidence of

12

other accidents is offered solely to show notice." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 580 (5th Cir.1993) (citing *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir.1986)). In *Johnson*, the Fifth Circuit went on to say: "However, even when it is offered solely to show notice, the proponent of such evidence must establish reasonable similarity." *Id*. at 580 (citing *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cir.1989)).

*Willis v. KIA Motors Corp.*, No. CIV.A. 2:07CV062PA, 2009 WL 2351766, at *1 (N.D. Miss. July 29, 2009). After viewing the pleadings in *Willis*, Judge Pepper made various evidentiary rulings that, in the main, excluded the evidence of other accidents or lawsuits because they were not "reasonably similar" to the litigation before the *Willis* court.

According to plaintiffs, SMC possessed multiple reports related to failures of the subject FMBC. Plaintiffs say that the accidents and lawsuits that the parties herein contest are "substantially similar" allowing their introduction to show that SMC had notice of the accidents.

This court finds plaintiffs' argument unavailing. The submissions of the parties show that all of the accidents, for which this court has dates, occurred after Stubblefield's accident. Further, the parties did not provide this court the dates of the other accidents. The purpose in this lawsuit of showing notice would be to show that SMC possessed knowledge of the alleged FBMC defect before Stubblefield's accident, not after.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED that** defendants' Motion in Limine to Exclude Evidence of Other Accidents, Lawsuits, and Claims of Front Brake Issues on GSX-R Motorcycles **[Docket no. 270] is hereby GRANTED.**

**SO ORDERED this the 30th day of September, 2018.**

                **s/ HENRY T. WINGATE**
                **UNITED STATES DISTRICT COURT JUDGE**